# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Verint Americas Inc.,

     Plaintiff,

          Case No. 1:25-cv-4485-MLB

v.

Terminix Consumer Services, LLC,

     Defendant.

_____/

## OPINION & ORDER

Defendant Terminix Consumer Services, LLC moves to compel arbitration. (Dkt. 7.) Plaintiff Verint Americas Inc. opposes. (Dkt. 9.) The Court grants Terminix's motion.

## I. Background

Verint is a technology company specializing in "customer experience automation, information technology, artificial intelligence, and other types of software services." (Dkt. 1-1 ¶ 5.) Terminix handles

1

customer communications on behalf of Rentokil NA, a pest control company. (*Id.* ¶ 6.)

From August 15, 2020 until August 14, 2022, Verint provided "Workforce Optimization" and "Speech Analytics" software services to Terminix pursuant to a 24-month "order." (*Id.* ¶ 7.) A 2009 Master License Agreement ("MLA")—later supplemented by a 2020 Software as a Services ("SaaS") Addendum—set the terms of the transaction. (Dkt. 7 at 35.)[1] The MLA contains an arbitration provision, and the SaaS addendum incorporates that provision. (*Id.* at 30, 35.) The order expired on August 14, 2022. (Dkt 1-1 ¶ 15.) Before that, Terminix notified Verint that it would not renew the Speech Analytics software. (*Id.* ¶¶ 9–12.) The parties entered a new order that included only Verint's Workforce Optimization software. (*Id.* ¶ 15.)

---

[1] Terminix attaches both the Master License Agreement and SaaS Addendum to its Motion to Compel Arbitration. The Court may "consider evidence outside of the pleadings for purposes of a motion to compel arbitration." *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014); *see also In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing the standard used to resolve motions to compel arbitration as "summary-judgment-like"). The Court thus considers these documents.

Terminix continued using the Speech Analytics software for another two years (that is, until August 24, 2024) despite cancelling that part of the initial order. (*Id.* ¶ 16.) Terminix also falsely represented it was not using the Speech Analytics software during that time. (*Id.* ¶ 19.) When it learned of this, Verint sent Terminix an invoice for its unauthorized use of the software. (*Id.* ¶ 25–26.) Terminix disputed the invoice, and Verint sent Terminix a "notice of material breach." (Dkt. 7 at 67–69.) Verint sued Terminix for unjust enrichment, negligent misrepresentation, and other claims. (Dkt. 1-1.) As explained, Terminix moves to compel arbitration. (Dkt. 7.)

## II.    Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, governs the validity of arbitration agreements, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005), and "compels judicial enforcement of a wide range of written arbitration agreements." *Breletic v. CACI, Inc. Fed.*, 413 F. Supp. 2d 1329, 1334 (N.D. Ga. 2006). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bros. of Teamsters*, 561 U.S. 287, 297 (2010). To that end, "the court must

resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* Moreover, the FAA evinces a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (internal quotation marks omitted), such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "In the absence of an agreement to arbitrate, a court cannot compel parties to settle their dispute in an arbitral forum." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (emphasis added).

On a motion to compel arbitration, a court determines (1) whether the parties agreed to arbitrate the dispute in question and, if so, (2) whether legal constraints external to their agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Waiver of the right to arbitrate is an external legal constraint a court should consider. *See Hunter v. Global Abbeville, LLC*, 2024 WL 2743605, at *9–10 (N.D. Ga. Jan. 24, 2024).

## III.   Discussion

In its motion, Terminix argued the arbitration clause is enforceable and the parties' dispute falls within the clause.  (Dkt. 7 at 10-15.)  It did not argue an arbitrator—rather than the Court—should decide questions of arbitrability.   In response, Verint argued (in part) the Court should decide questions of arbitrability and Terminix waived its right to argue otherwise.  (Dkt. 9 at 8-9.)   In its reply, Terminix—for the first time— argued the arbitration provision "clearly and unmistakably delegated questions of arbitrability to the arbitrator by incorporating the American Arbitration Association rules."  (Dkt. 12 at 6.)

It is well-established that "[a]rguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."  *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009); *see Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014) ("After [defendant] pointed out in its response brief that [plaintiff] had waived [an issue], they did make some arguments and cite some authorities in their reply brief … Those arguments come too late.").  That fits here.  The question of who decides arbitrability is not an obscure issue

one could easily overlook.  So a party can waive its right to contest the issue by failing to raise it timely.  The Court concludes Terminix did that.

### A.    Verint's Claims Arise Out of or Relate to the Parties' Agreement

In Section 10.3 of the MLA, the parties agree to arbitrate "***any controversy or claim arising out of or relating to [the] Agreement***." (Dkt. 7 at 2 (emphasis added).)  Courts routinely give broad effect to arbitration clauses containing comparable language.  *See, e.g.*, *Gedimex, S.A. v. Nidera, Inc.*, 290 F. App'x 311, 312 (11th Cir. 2008) ("We give the phrase 'arising out of' in an arbitration clause a broad reading"); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002) ("By agreeing to submit to arbitration 'any dispute, controversy, or claim arising out of or in connection with' the [] Agreement, [the parties] have signaled an intent to arbitrate all possible claims that touch on the rights set forth in their contract."); *Li v. Standard Fiber, LLC*, 2013 WL 1286202 at *6 (Del. Ch. Mar. 28, 2013) ("[The arbitration clause] provide[s] that 'any claim or controversy arising out of or relating to this agreement, or the breach thereof' shall be settled by arbitration. That broad language generally refers all disputes to arbitration.")  When determining whether a dispute "arises out of" or "relates to" an

6

underlying contract, courts in this circuit consider "whether the dispute in question was an immediate, foreseeable result of the performance of contractual duties.   In other words, there must be 'some direct relationship' between the dispute and the performance of duties specified by the contract." *Hearn v. Comcast Cable Commc'ns.*, 992 F.3d 1209, 1213 (11th Cir. 2021) (citation omitted); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011).[2]

Terminix argues the dispute about its alleged continued use of the Speech Analytics Software (after cancelling the initial order) arises out

---

[2] "[S]tate law governs the interpretation and formation of [arbitration] agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).  Because the parties agreed the MLA would "be governed by and construed in accordance with the substantive laws of the State of Delaware," (Dkt. 7 at 30), the Court considers Delaware's principles of contract interpretation. While Verint agrees that Delaware law applies to disputes under the MLA in general, it argues Georgia law applies here instead because its claims do not qualify as a "controversy or claim arising out of or relating to" the MLA. (Dkt. 9 at 5, n.1.)  As explained herein, this case arises under the MLA and is not excepted from its arbitration provision.  In any event, Verint concedes that "regardless of whether Georgia or Delaware law applies, both states apply the same pertinent principles in interpreting contracts."  (*Id.*)  The Court also recognizes *Gedimex* is unpublished and not binding.  The Court cites it and other unpublished cases nevertheless as instructive.  *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

of or relates to the MLA because, "[i]f it were not for the MLA, Verint and [Terminix] would have no business relationship at all, meaning there would not be a dispute to form the basis of this lawsuit . . . [and] the factual allegations underlying each of Verint's claims would not exist." (Dkt. 7 at 12.)  Terminix further argues (1) the parties' dispute cannot be resolved without reference to several provisions of the MLA and (2) Verint expressly acknowledged the agreement's applicability to this dispute in its pre-litigation communications.  (*Id*. at 13-17.)

The Court agrees that the parties' dispute about whether Terminix improperly used the Speech Analytics Software after the contract ended falls within the arbitration provision.  That provision governs "any controversy or claim arising out of or relating to [the] Agreement."  And Verint's claim for fees arising from Terminix's ongoing use of the software (even posed as an unjust enrichment claim) certainly arises out of the agreement.  Verint essentially argues Terminix continued acting as though it had the right to access the software after it gave up its ability to do so.  Indeed, the SaaS Addendum—which incorporates the arbitration provision—states that after termination of the initial order Terminix's "right to access and use any of the SaaS services . . . shall

8

immediately terminate." (Dkt. 7 at 39.)  Whether Terminix violated this provision certainly falls with the agreement.

The Eleventh Circuit's decision in *Hearn* supports this conclusion. In that case, the Court of Appeals compelled a plaintiff to arbitrate his claim that Comcast accessed his credit information without permission—nearly two years after he had canceled his subscriber agreement—using information it retained "*only* because of its previous relationship with [Plaintiff]." 992 F.3d at 1214 (emphasis in original).  The Eleventh Circuit explained the claim "relate[d] to" the subscriber agreement, in large part, because "Comcast would not have [had] access to [plaintiff's] personal information—and therefore could not have engaged in the allegedly tortious conduct—but for the pre-existing Agreement." *Id.* at 1216.[3]  Thus, there was "some direct relationship" between Comcast's conduct and the parties' prior performance under the subscriber agreement.  *Id.*  Similarly—and as Terminix argues—the MLA gave Terminix access to the software in the first place.  It could not have

---

[3] Although the arbitration clause in *Hearn* expressly applied to disputes arising "after the expiration or termination of the Agreement," the Eleventh Circuit determined that the dispute "related to" the agreement without considering that provision.  992 F.3d at 1214.

accessed that software after terminating the order but for the pre-existing MLA, and thus there is a direct relationship between Terminix's conduct and the parties' prior performance under the MLA.

The Court is also persuaded by Terminix's argument that this litigation likely cannot be resolved without reference to the MLA and SaaS addendum, strengthening the connection between Verint's claims and the parties' agreement.  (Dkt. 7 at 14.)  In this regard, Terminix points to Section 3 of the MLA, which it contends will resolve a "central dispute in this case" concerning "whether Verint or [Terminix] was responsible for terminating [Terminix's] access to the Speech Analytics Software once [Terminix] cancelled its subscription in June 2022."[4]  (*Id.*)  If Verint had that responsibility but failed to terminate Terminix's access, Terminix's continued usage of the software might be the "immediate, foreseeable result of the [non]-performance of [Verint's] contractual duties," creating a direct nexus between a provision of the

---

[4] Section 3 reads in pertinent part: "Verint will specify to Customer procedures according to which Customer may establish and obtain access to and use the features and functions of the [Software] … Verint will bear responsibility, at its own cost and expense, for the procurement, preparation, hosting, operation, and maintenance of the Hosted Environment."  (Dkt. 7 at 14.)

contract and the conduct at issue. *See Doe*, 657 F.3d at 1219; *Hearn*, 992 F.3d at 1213. Consider also Verint's misrepresentation and fraud claims, which rest on allegations that Terminix lied in saying it would stop using the software after the subscription ended and that Verint reasonably relied on those representation in failing to both monitor Terminix's activity and invoice Terminix for its on-going access. (Dkt. 1-1 at ¶¶ 39–53.) Evidence that Verint was required to cut off Terminix's access but failed to so do could undermine those claims considerably. It might be particularly hard to believe Verint "reasonably relied" on Terminix's representation if the contract charged Verint with cutting off Terminix's access. (*Id.*) In this way, Counts III and IV certainly have "some direct relationship" to provisions of the MLA. *Hearn*, 992 F.3d at 1213.

Verint's prior recognition—in discussions with Terminix—that the MLA and SasS addendum govern this dispute buttresses the Court's conclusion that Verint's claims arise out of or relate to the parties' agreement. On April 15, 2025, two months before initiating this litigation, Verint sent Terminix a "notice of material breach" that repeatedly referenced and relied upon the MLA and SaaS addendum. (Dkt. 7 at 67–69.) The notice invoked at least four sections of the MLA

and SaaS Addendum to compel Terminix to pay the amount Verint seeks in this lawsuit.  (Dkt. 7 at 67–69 ("This notice of material breach is provided by Verint to Terminix in accordance with **Section 11.6** (Notices) of [the MLA]"; "As of the date of this Breach Notice, in accordance with **Section 9** (Termination) of [the MLA], Terminix has fifteen (15) days to pay in full the Past Due Amount"; "[I]n the event Terminix does not pay such Past Due Amount in full … in accordance with **Section 5.2** (Late Payment) [of the MLA], Terminix is also obligated to pay Verint any costs of collection"; "In the event Terminix had a good faith dispute with respect to the Past Due Invoice, under **Section 6** (Fees) of the [SaaS Addendum], Terminix had the opportunity to initiate such dispute.") (emphasis added).)

Verint grounded its notice of material breach in the contract's terms in April, only to drop those same terms two months later when it filed its complaint.  The Court sees no reason for such an about-face other than Verint's wish to avoid certain provisions of the MLA, including its arbitration provision.  It would be unfair to allow Verint to invoke the agreement's dispute resolution mechanism when convenient yet reject it when not.  Verint's prior recognition that the parties' agreement governs

this dispute supports the Court's finding that this dispute arises out of or relates to the agreement.

And finally, Verint does not really challenge Terminix's argument that the parties' dispute arises under or relates to the MLA. Rather than addressing that argument, Verint argues the dispute is excepted from the arbitration provision under Sections 5 and 10 of the contract (Dkt. 9 at 4-9), an argument the Court rejects below.

For all these reasons, the Court concludes the dispute over Terminix's alleged continued use of the software falls within the scope of the parties' arbitration provision.

## B.    Verint's Claims Are Not Excepted from the MLA's Arbitration Clause

Verint's central argument against arbitrability is that, regardless of whether this dispute arises under or relates to the parties' agreement, it is a fee dispute and the "plain language" of the MLA excludes fee disputes from arbitration. In making this argument, Verint relies on one definition and three sections of the MLA. (Dkt. 9 at 4–7.)

To begin, the MLA defines an "Order" as "the details of an order by Customer for a Product, Support, and/or Services provided by or through Verint on an order form or schedule provided by Verint and signed by

13

Customer." (*Id.* at 26.) Next, Section 5 of the MLA governs the invoicing,

payment, and dispute of fees for all "Orders" under the contract. (*Id.* at

28.) It requires the parties to negotiate in good faith any fee disputes.

Section 10.2 then creates a pre-arbitration mediation requirement for all

disputes other than "fee disputes" (and disputes not at issue here) under

Section 5. It states:

> ***Except for disputes ... arising out of or relating to
> Section 5 [] of this Agreement***, the Parties must mediate
> disputes arising out of or relating to this Agreement before
> commencing any arbitration set forth in Section 10.3. No
> Party to this Agreement can demand mandatory arbitration
> against the other Party without first participating in
> mediation, unless a Party refuses to submit to mediation and
> legal action is brought to specifically enforce this mandatory
> mediation provision of this agreement.

(Dkt. 7 at 30) (emphasis added). Finally, the arbitration provision—

Section 10.3—says "***[e]xcept as otherwise set forth in Section 10.2***

***above***, any controversy or claim arising out of or relating to this

agreement will be settled by binding arbitration. (Dkt. 7 at 2) (emphasis

added).

Verint interprets these provisions to "plainly and unambiguously

exempt fee disputes from mandatory arbitration." (Dkt. 9 at 5.) It argues

that, because Section 10.3 requires arbitration "except as otherwise set

14

forth in Section 10.2," and Section 10.2 excludes fee disputes under Section 5 from its terms, "the parties must arbitrate claims … except for fee and payment disputes relating to Section 5." (*Id.* at 6.)

Terminix reads these provisions differently. It interprets Section 10.2's carve-out for Section 5 fee disputes to "simply mean that fee disputes are not subject to the pre-arbitration mediation requirement" provided by 10.2. (Dkt. 12 at 2.) According to Terminix, this means that "if a dispute arises out of or relates to Section 5 [that is, a fee dispute], the parties may proceed directly to arbitration under Section 10.3, without first mediating." (*Id.*) Terminix concludes "the plain language of Sections 10.2 and 10.3, read together, require all claims 'arising out of or relating to' the MLA to be settled by binding arbitration (including fee disputes), with the only exception that some disputes must be mediated first." (*Id.*) Thus, under Terminix's reading, because Verint's claims arise out of or relate to the parties' agreement, they are subject to arbitration—regardless of whether this action qualifies as a "fee dispute" under Section 5.

The Court agrees with Terminix for several reasons. First, that is the plain reading of the MLA. Second, if the parties had intended to

exclude entirely fee disputes from arbitration, they would have plainly said so, as they did with respect to the mediation requirement in the preceding section. (Dkt. 7 at 30.) Further, Terminix's reading gives the parties' broad arbitration clause its intended scope. The parties agreed to arbitrate "any controversy or claim arising out of or relating" to the MLA—language that facially encompasses fee disputes. (*Id.*) Verint's reading would carve out fee disputes—a routine and foreseeable category of contractual disputes—from both mediation and arbitration, creating a significant hole in the contract's dispute resolution framework. Yet Verint offers no explanation as to why the parties would have intended for such an exclusion, much less created one without explicitly saying so. (Dkt. 7 at 4–7.) Accordingly, the Court rejects Verint's argument that a combined reading of the various provisions excludes fee disputes from arbitration. This reading reflects the parties' intent to capture as many disputes as possible in the agreement's broad dispute resolution framework. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1226 (11th Cir. 2002) ("The cardinal rule of contract construction is to ascertain the intent of the parties and to interpret a contract so that the parties' intentions are given effect.") (internal quotations omitted).

In the light of this conclusion, the Court need not address the parties' arguments as to whether Verint's claims qualify as fee disputes under Section 5 since their dispute falls within the arbitration provision either way.  (Dkt. 9 at 6–7; Dkt. 12 at 5–6.)

## C.    Terminix Did Not Disclaim the Parties' Agreement

As an alternative argument, Verint says Terminix "disclaimed the applicability of the contract by taking the pre-litigation position that no contract for the provision of Verint's Speech Analytics software services existed from August 2022 to August 2024."  (Dkt. 9 at 9.)  Verint claims Terminix, in its response to Verint's notice of material breach, attempted to "disclaim the existence of an applicable agreement between Verint and Terminix to avoid a claim of breach."  (*Id.*)  According to Verint, this constituted "waiver by conduct" and prevents Terminix from enforcing the MLA's arbitration provision.  (*Id.* at 10.)

Verint, however, fails to identify any language in Terminix's response that "disclaims" the parties' agreement.  Nor could it.  While Terminix's response argued there was no existing "Order" for Verint's Speech Analytics Software after August 2022, it never said the MLA and SaaS addendum no longer governed the parties' relationship.  (Dkt. 7 at

17

72–74.)  To the contrary, it repeatedly cited the parties' agreement and affirmed the applicability of at least eight provisions of the agreement. (*Id.*)  And even if Terminix verbally disclaimed the agreement in its response, its conduct certainly did not.  Even after Terminix sent Verint its response to the notice of material breach, the parties' contractual relationship continued with respect to the other software services provided by the agreement and Terminix indicated its desire to continue with that relationship.  (*Id.*)  ("Verint's threat to terminate Terminix's access to the other SaaS Services to which it currently subscribes—and for which it has already paid—is without basis in the Agreement and constitutes patent bad faith. … If Verint cancels Terminix's current services, Terminix will hold Verint responsible for any and all damages that result.")  Terminix did not disclaim the agreement.

## IV.  Conclusion

The Court **GRANTS** Defendant's Motion to Compel Arbitration (Dkt. 7).  The Court **GRANTS** Plaintiff's Motion to Seal (Dkt. 8) and **DIRECTS** the Clerk to permanently seal Dkt. 7.  The Court **STAYS** this action pending the completion of arbitration.  The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case during the period of

the stay.  Either party may, by motion, move to reopen the case once

arbitration is complete.

**SO ORDERED** this 17th day of December, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE